IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LAQUITA A. PRICE,<br>　　PLAINTIFF,<br><br>VS.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br>　　DEFENDANT. | §<br>§<br>§<br>§　CIVIL ACTION NO. 4:07-CV-435-Y<br>§<br>§<br>§<br>§ |

<u>FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER</u>

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

<u>FINDINGS AND CONCLUSIONS</u>

A.　STATEMENT OF THE CASE

Plaintiff LaQuita Price filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. Price applied for disability insurance and SSI benefits on January 28, 2005, alleging disability commencing January 3, 2005. (Tr. 72, 439). Her insured status for purposes of disability insurance benefits extends through December 2009. (Tr. 64).

The Social Security Administration denied Price's applications for benefits both initially and on reconsideration. Price requested a hearing before an administrative law judge (the "ALJ"), and ALJ Larry Marcy held a hearing on September 7, 2006 in Fort Worth, Texas. (Tr. 448). Price was represented by counsel. On January 25, 2007, the ALJ issued a decision that Price was not disabled and was not entitled to disability insurance or SSI benefits because she retained the functional capacity to perform her past relevant work as a security guard. (Tr. 14-21). The Appeals Council denied Plaintiff's request for review of her case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B.  STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the

impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence

is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUES

   1.  Whether the ALJ gave proper consideration to treating source opinions in assessing Price's residual functional capacity as it relates to her ability to handle objects; and

   2.  Whether the ALJ's determination that Price can perform her previous work is supported by substantial evidence.

D.  ADMINISTRATIVE RECORD

   1.  Treatment History[1]

Price graduated from high school in 1974 and has relevant work experience as a home healthcare attendant and a security guard. (Tr. 130, 134). Price has a history of right shoulder, arm, and hand pain. She injured her shoulder when she fell in December 2004. (Tr. 142). X-rays did not show a fracture, but the emergency room physician who examined her suspected a rotator cuff tear. She was discharged after a sling was placed on her right shoulder. (Tr. 143, 144).

Price underwent a consultative evaluation with Sreekanth Chintamaneni, M.D., on April 14, 2005, to develop the record in support of her disability applications. (Tr. 150). Her chief complaints included arthritis, heart problems, carpal tunnel syndrome, right knee pain, and right shoulder pain.

---

[1] The summary of Price's medical history focuses on information related to Price's use of her arms and hands. Price has been treated for osteoarthritis in her hips and low back, degenerative joint disease in her right knee, episodes of unstable angina, and a skin disorder, but a review of these impairments is unnecessary because Price has not challenged the Commissioner's assessment as it relates to any of these impairments.

Price reported that she had carpal tunnel syndrome in both hands, but greater in her dominant right hand, which made it difficult for her to grip things. She wore wrist splints during the evaluation. Price reported persistent right shoulder pain since injuring her shoulder in December 2004, and the pain was worse if she elevated her right arm. (Tr. 150).

On evaluation Price was able to get on and off the examining table without difficulty. An examination of her right upper extremity was normal except for positive tenderness at the acromioclavicular (A-C) joint and wrist, with positive Tinel's sign and Heberden's and Bouchard's nodes on her fingers.[2] Range of motion in her right shoulder was intact, but painful. (Tr. 151, 152). The assessment of her left upper extremity was normal except for a positive Tinel's sign across her left wrist and Heberden's nodes on her fingers. (Tr. 151). Price's motor strength was 5/5 in all muscle groups tested. Her handgrip was 5/5, normal and symmetric. Her fine finger movements were normal and she demonstrated a normal ability to handle small objects and fasten buttons on clothing. A sensory examination was also symmetric and normal. (Tr. 151).

Price underwent magnetic resonance imaging (MRI) on April 26, 2005, that confirmed a full-thickness tear of her right rotator cuff, impingement syndrome,[3] and suspected erosion of the humerus. (Tr. 246-47). Treating physician Sabna Thoppil, D.O., issued a statement in May 2005 that Price suffered from weakness and pain in her right arm secondary to impingement syndrome and a rotator cuff tear that prevented her from working. (Tr. 172). On July 18, 2005, Thoppil

---

[2] Tinel's sign refers to a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. . DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1741 (31st ed. 2007). Heberden and Bouchard nodes are nodular protrusions on the joints of the fingers attributable to osteoarthritis or degenerative joint disease. *Id*. at 1298, 1299.

[3] Impingement syndrome refers to progressive pathologic changes resulting from mechanical impingement against the rotator cuff. *Id*. at 1859.

opined that Price was temporarily disabled by a rotator cuff injury that was expected to last more than six months. (Tr. 175). During a follow-up visit with Thoppil on September 14, 2005, Price reported that her shoulder pain was worse and rated her pain as a 9 on the pain scale. (Tr. 177). She complained that physical therapy was making her condition worse. (Tr. 177). Thoppil released Price for part-time work up to twenty hours a week with a ten-pound lifting restriction. (Tr. 206).

Electromyography (EMG) and nerve conduction studies were performed on October 24, 2005 to evaluate Price's complains of pain in her right shoulder and numbness in her right hand. (Tr. 200). Manual muscle testing was within normal limits, but there was decreased sensation in the first and second fingers of her right hand. Normal sensation was noted in the remainder of her fingers and right arm. (Tr. 200). The studies were interpreted as showing no conclusive evidence of cervical radiculopathy, carpal tunnel syndrome, or right-sided neuropathy. (Tr. 201).

Brian Webb, M.D., performed surgery to repair Price's shoulder on January 13, 2006. (Tr. 186-95). Intraoperative findings included a rotator cuff tear and underlying degenerative joint disease of the A-C joint. (Tr. 187). In March, Price still had some pain and limited range of motion and was directed to continue physical therapy. (Tr. 363). Three months after surgery, Price reported that her shoulder was much better, but she complained of sharp pain radiating from her neck into her arms. (Tr. 362). Another set of EMG studies performed in May 2006 showed mild carpal tunnel syndrome. Price also exhibited a positive Phalen's maneuver[4] and a positive Tinel's sign. (Tr. 361).

---

[4] Phalen's maneuver detects carpal tunnel syndrome. *Id*. at 1117. The size of the carpal tunnel is reduced by flexion, extension or compression of the affected wrist for 30 to 60 seconds. *Id.*

Thoppil released Price for part-time sedentary/light work on June 30, 2006, but restricted her to no overhead use of her right hand. He noted that Price's disability was not considered permanent and was expected to last for six months or less. (Tr. 357). On July 28, 2006, in a statement addressed to the Social Security Administration, Thoppil asserted that Price continued to have weakness and limited mobility in her right arm. (Tr. 356). Thoppil opined that Price's history of a rotator cuff tear, osteoarthritis, and boils had limited her functioning and rendered her unable to work. (Tr. 356).

In September 2006, Thoppil completed a medical questionnaire at the request of Price's attorney. (Tr. 422). Thoppil noted that Price continued to work to regain strength in her right upper extremity following surgery. EMG studies also confirmed mild sensory loss in her wrists, which caused numbness, weakness, swelling, and pain. (Tr. 423-24). Thoppil opined that Price's ability to perform simple grasping was affected if she were required to perform the activity for more than a few hours, as was her ability to perform pushing/pulling. Thoppil noted no limitations in Price's capacity for fine manipulation. (Tr. 424). Limited strength in Price's right shoulder also affected her ability to use her right hand for repetitive tasks. Price could be expected to use her hands for tasks such as reaching, feeling, or grasping on an occasional basis (defined as two hours in an eight-hour workday), but would need to rest her hand and arm if it became painful, swollen, or stiff. (Tr. 425). Thoppil also opined that Price's medication would markedly affect her ability to maintain concentration, persistence, or pace in a work setting because it made her sleepy and lethargic. (Tr. 426).

2.  Administrative Hearing

Price testified that she was born December 12, 1955. She testified that she fractured her shoulder and tore her rotator cuff while hanging laundry on a clothesline in 2004. She had undergone two shoulder surgeries, but remained unable to lift her arm overhead. (Tr. 456-57). Price testified that she was able to drive, but sometimes rested her arm on a pillow while driving. (Tr. 458).

In addition to shoulder pain, Price testified that carpal tunnel syndrome caused pain and numbness in her hands, which limited her ability to write. (Tr. 458-59). She also testified that she had arthritis in her back, hips, and knees that prevented her from walking more than short distances. (Tr. 459). She estimated that she could stand for about twenty seconds, and testified that she needed to sit while doing chores like dishwashing. (Tr. 460). Price testified that her medications were not helpful and made her sleepy. (Tr. 462-63).

Vocational expert Barbara Dunlap testified that Price's past relevant work as a home healthcare attendant was semi-skilled and required medium exertion and her previous work as a security guard was semi-skilled and required light exertion. (Tr. 466-67). The ALJ asked the vocational expert to consider a person unable to perform overhead work who experienced a mild decrease in fingering and feeling with her dominant right hand and who was unable to perform complex tasks due to pain and some depression. The vocational expert testified that work as a security guard would fit within these parameters, but would not be suitable if gripping or fingering ability was elevated to markedly limited. Marked limitations in concentration, persistence or pace would also preclude the individual from working as a security guard. (Tr. 467).

3. ALJ Decision

The ALJ found that Price had not engaged in substantial gainful activity since January 3, 2005, and had the following severe impairments: status post right rotator cuff repair, arthritis, and carpal tunnel syndrome. (Tr. 16). The ALJ did not find that Price had any impairment or combination of impairments that met or was medically equivalent to any listed impairment. (Tr. 17). The ALJ instead found that Price retained the residual functional capacity to lift, carry, push or pull twenty pounds occasionally and ten pounds frequently; stand or walk for six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday; however, Price was unable to perform overhead work or complex tasks and had a mild decrease in fingering and feeling in her dominant right hand. (Tr. 18). The ALJ determined that Price's previous job as a security guard did not require her to perform work-related activities that exceeded her residual functional capacity. The ALJ concluded that Price was not disabled because she was capable of performing her past relevant work. (Tr. 20-21).

D. DISCUSSION

1. Treating Source Opinions

Price complains of the ALJ's failure to articulate good cause for rejecting her treating physician's opinion that her handling and grasping abilities were limited. Thoppil had specified in the September 2006 questionnaire that Price could use her hands reliably for gross or fine motor activities, including reaching, feeling or grasping, on an occasional basis, but the ALJ did not include such a limitation in his assessment of Price's residual functional capacity (RFC). Price asserts that she was prejudiced by the ALJ's rejection of Thoppil's opinion because incorporating

this limitation would preclude her from performing her previous work as a security guard, which would have required the ALJ to proceed to the fifth step in the sequential evaluation process where the burden shifts to the Commissioner.

The ALJ must consider and weigh all medical opinions in the record, even opinions on issues like RFC that are reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2), 416.927(e)(2). If the RFC assessment conflicts with a medical source opinion, the ALJ must explain why the opinion was not adopted. SOCIAL SECURITY RULING 96-8p. Additionally, opinions, diagnoses, and medical evidence from a treating physician who is familiar with the claimant's impairments, treatments, and responses should be given great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The ALJ assigns controlling weight to the opinions of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). Before rejecting a treating source opinion, the ALJ must address several relevant factors, including the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. *See* 20 C.F.R. § 404.1527(d); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). *See also* SOCIAL SECURITY RULING 96-2p, 96-5p. However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the

evidence. *See* 20 C.F.R.. § 404.1527(e); *Leggett*, 67 F.3d at 564; *Greenspan*, 38 F.3d at 237.

The ALJ recognized that Thoppil had offered several inconsistent statements related to Price's disability, but the ALJ rejected the statements as contradictory and unsupported by objective evidence. (Tr. 20). The ALJ stated that he had given some consideration to Thoppil's opinion that Price's medications would interfere with her concentration, but the ALJ did not otherwise address specific findings in Thoppil's September 2006 assessment. (Tr. 20). The only manipulative restrictions included in the RFC assessment were a prohibition against overhead reaching and accommodation of a mild decrease in fingering and feeling in Price's right hand. But as Price notes, reaching and grasping are work-related activities distinguishable from fingering and feeling activities. Reaching, handling, fingering, and feeling require progressively finer usage of the upper extremities. SOCIAL SECURITY RULING 85-15. Handling involves seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands, and is an activity required in almost all jobs. *Id*. Fingering involves picking, pinching and working primarily with the fingers, which is necessary in the performance of most unskilled and sedentary jobs, while feeling the size, shape, temperature or texture of an object is a function required in few jobs. *Id*.

Price complains that the ALJ did not appraise Thoppil's opinions individually instead of rejecting Thoppil's statements outright. The Social Security Rulings caution that medical source statements may be comprised of separate medical opinions regarding diverse areas of physical and mental functioning, so that it may be necessary to adopt or reject each one. SOCIAL SECURITY RULING 96-5p. And in Price's case, she has established that the ALJ erred by not complying with this ruling.

Diagnostic evidence confirming a rotator cuff tear requiring surgical intervention, as well as Price's own complaints of problems using with her hands and arms. The Commissioner notes that consultative evaluation showed that Price had a normal hand grip and fine finger movements, but any conflict between this evidence and Thoppil's assessment of Price's handling or grasping abilities is for the ALJ to consider and explain. *See Newton*, 209 F.3d at 455 (holding that decision stands or falls with the reasons set forth in the ALJ's decision as adopted by Appeals Council). The ALJ did not expressly weigh Thoppil's opinions about Price's handling abilities or explain why he was discounting this aspect of Thoppil's assessment. Because the ALJ has provided no insight in to his reasons for excluding any handling limitation, and the evidence otherwise appears to support such a limitation,[5] the ALJ has breached his duty to weigh a treating source opinion in accordance with the regulations and rulings and state good cause for rejecting that opinion.

Price has also demonstrated prejudice by providing the court with vocational evidence that the job description for a security guard includes a requirement of frequent handling, defined as 1/3 to 2/3 of the workday, which exceeds Thoppil's assessment of her abilities. (Plf. Brief, Ex. A). If Thoppil's assessment were adopted and found to preclude performance of Price's past relevant work, the disability determination would have proceeded to Step Five and the burden would have shifted to the Commissioner. Remand is necessary to provided the Commissioner with an opportunity to discuss Thoppil's assessment and quantify the restrictions, if any, that Price may have in her ability to use her arms and hands for gross matter activities in the performance of work-related

---

[5] The state agency medical consultants found Price capable of medium work and frequent reaching, handling, fingering and feeling bilaterally; however, the ALJ stated that he gave very little weight to the state agency assessment because of after-acquired evidence related to Price's rotator cuff injury that imposed further restrictions. (Tr. 20, 156-63).

duties.

2. Conflicting Vocational Evidence

Price also asserts that the ALJ's determination that she can perform her past work as a security guard is unsupported by substantial evidence because the ALJ failed to recognize or resolve conflicts between the vocational expert's testimony and information in the Dictionary of Occupational Titles (DOT). She asserts prejudice as a result of this failure because the job requirements of a security guard as defined in the DOT exceed her RFC for non-complex tasks. *See generally* DICTIONARY OF OCCUPATIONAL TITLES § 372.667-034 (rev. 4th ed. 1991).

The Social Security Administration issued Ruling 00-4p to clarify the use of vocational experts and other occupational information in the disability determination process. *See generally* SOCIAL SECURITY RULING 00-4p. The ruling places an affirmative duty on the adjudicator to inquire into possible conflicts between vocational expert evidence and the DOT. *See id.* Although Ruling 00-4p indicates an agency policy of placing primary reliance on the DOT, the Ruling cautions that neither the DOT nor the vocational expert's evidence will automatically "trump" in cases of conflict, and vocational experts may be used at Steps Four and Five to resolve complex vocational issues. *See id. See also Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000).

Although the ALJ affirmed in his opinion that the vocational expert testified that her testimony was consistent with the DOT, (Tr. 20), the transcript of the administrative hearing contains no testimony from the vocational expert reflecting that she was either questioned about conflicts with the DOT or volunteered that there were no such conflicts.[6] The court need not

---

[6] Several months passed between the hearing and the ALJ's decision, with the delay attributable in part to Price's request that she be allowed to submit additional opinion evidence from her treating physician. (Tr. 454-55).

consider whether this breach of duty resulted in any prejudice to Price's case because the ALJ's error can be corrected as part of the remand for further assessment of Price's residual functional capacity. If the treating source opinion limiting Price's grasping ability is adopted on remand, it appears to preclude her from performing her past relevant work as a security guard and the issue of any conflict in the job demands of Price's past relevant work would become moot. On remand, the Commissioner may obtain additional assistance from a vocational expert or other vocational resource with respect to Price's ability to use her upper extremities, or any other issues as the Commissioner deems appropriate, and should revisit his responsibility to consider and resolve any conflicts in the vocational evidence.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings and conclusions.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until August 8, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed

findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until August 8, 2008 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JULY 17, 2008.

    /s/   Charles Bleil  
CHARLES BLEIL  
UNITED STATES MAGISTRATE JUDGE